## Prouse, Appellant, v. Stocker.

*Mechanics' liens—Character of claim—Work in obtaining contracts as part of superintendence—Act of June 4, 1901, P. L. 431 (Mechanics' Lien Law).*

A mechanic's lien may be filed to cover work done in assisting to make contracts with materialmen and contractors for the furnishing of work and materials in and about the erection and construction of the defendant's house as part of superintendence, and for superintending such erection and construction. Such work is part of the services rendered in connection with the erection and construction, and is entitled to protection under the terms of the Mechanics' Lien Law.

Argued November 18, 1919. Appeal, No. 42, Oct. T., 1919, by plaintiff, from order of C. P. Delaware County, March T., 1918, No. 466, striking off item of mechanic's lien in the case of Walter D. Prouse v. Carolyn W. Stocker. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Rule to strike off mechanic's lien. Before BROOM-ALL, J.

The court made absolute the rule to strike off an item in the lien. Plaintiff appealed.

*Error assigned* was order of the court.

*Paul C. Hamlin,* and with him *Samuel D. Matlack* and *Lewis Lawrence Smith,* for appellant.—The services of the plaintiff were of a nature comprehended under the Mechanics' Lien Law: Mechanics' Lien Act of June 4, 1901, P. L. 431, 3 Purd. 2466; Dyer v. Wallace, 264 Pa. 169; Dame's App., 62 Pa. 417; Hartman's App., 107 Pa. 327; The Bank of Pennsylvania v. Gries, 35 Pa. 423; St. Clair Coal Co. v. Martz, 75 Pa. 384; Bernheisel v. Smothers, 5 Pa. Superior Ct. 113.

*W. Rogers Fronefield,* for appellee.

OPINION BY LINN, J., February 28, 1920:

This appeal involves the construction of part of the Mechanics' Lien Act of June 4, 1901, P. L. 431. Appellant was the contractor and appellee was the owner. The amount of the lien is $1,128.40. A rule was granted below to show cause why the lien should not be stricken off upon an allegation that the lien was "irregular and insufficient to bind the property" for four specified reasons, only one of which is now material, and that was stated as follows: "The charge of $400 is not the subject of a mechanic's claim, inasmuch as a part of it without stating how much is for 'making contracts with ma-

terialmen and contractors for the furnishing work and materials in and about the erection and construction of the' defendant's house and the balance for superintending the erection and construction." The petition asked that the court "strike the said lien from the record or to strike out of said lien such items thereof as are not the proper subject of a mechanic's claim against your petitioner's property." The claim stated "The nature or kind of work done, for which this lien is filed, is (a) that of assisting the owner and her architect, Richard C. Loos, in making contracts with materialmen and contractors for the furnishing of work and materials in and about the erection and construction of the hereinafter described structures, and of superintending the work of erection and construction of said structures; ......" The claim alleged that on June 30, 1917, the parties orally agreed to that effect and that on July 16, 1917, claimant began performance of his undertaking and completed it on March 22, 1918.

The learned court below struck out of the lien the item of $400 saying, "While it may be that the work in superintending the erection or construction is lienable, yet if the other part of the contract is not lienable, then inasmuch as it cannot be determined how much is payable for the part which is not lienable, the whole charge will have to fail......We do not think that the Act of 1901 intended to include as a beneficiary a person who advised the owner, with respect to contracts......"

One part of the contractor's engagement was to superintend the erection and construction; the other part of his engagement was to assist the owner and the architect in making contracts with materialmen and contractors for work and materials for and about that same erection and construction which he had undertaken to superintend. Were both parts of his engagement superintendence or the furnishing of skill for and about the erection and construction within the meaning of the statute? It provides: "The word 'contractor' means one

who by contract or agreement, express or implied,......
superintends the structure......or any part thereof;
or furnishes.......skill or superintendence thereto
......or any or all of them, whether as......an archi-
tect, superintendent, builder ......" According to
the Century Dictionary, to superintend is "to direct the
course and oversee the details (of some work, as the
construction of a building)"; "to manage"; the words
"overlook," "control," and "supervise" are synonyms;
superintendence is doing the foregoing.    To furnish
"skill" is to furnish "practical knowledge and ability"
(Ibid).    The ordinary meaning of the words just
quoted includes what the claim states the contractor
in this case agreed to and did perform.    It is
immaterial that in stating the agreement to "superin-
tend the work of erection and construction" the parties
separately stated what already was fairly included in
the term to superintend, i. e., assistance "in making con-
tracts with materialmen and contractors for furnishing
of work and materials in and about the erection and con-
struction."

Though "to direct the course and oversee the details"
is included in the term to superintend, it is obvious that
such direction and oversight may take place more ad-
vantageously, for example, if the material used be first
approved by the contractor; or if he participate in the
selection of the subcontractors, or if deliveries of ma-
terial are made at times or in manner or otherwise as
specified by the contractor instead of without that as-
sistance, and that the ultimate end, i. e., the construction
of the building, may be more satisfactorily accomplished
if the contractor selected to superintend the work par-
ticipates in determining those details as appears to
have been the intention of the parties to this suit as ex-
pressed in their agreement.    Such contractor in render-
ing the assistance specified "furnishes.......skill,"
(supra) "immediately connected with the erection of
the building, and deemed necessary to its satisfactory

construction by the plaintiffs in error" (Bank v. Gries, 35 Pa. 423). The accepted definitions of the words of the statute show that both parts of the engagement of the contractor joined as they were in the contract in this case are within the terms of the statute.

All of appellant's work, the subject of the $400 item, was immediately connected with the erection of the building quite as much as the work of the architect who furnished plans, and who was employed "to direct the execution of the same by the various mechanics" in Bank v. Gries, supra, and who was permitted to maintain a lien; it is not like the mere furnishing of a set of plans by an architect who does not supervise the construction of the building pursuant to the plans, as in Price v. Kirk, 90 Pa. 47, where in distinguishing Bank v. Gries, the court said that in the latter case "the architect was employed not only to make plans and specifications for the building, but to direct and oversee its erection in accordance therewith. His claim, therefore, was for work done about the erection of the building within the words of the law. The mere drawing of the plan and writing out the specifications is no more of this character than would be the work of an attorney in preparing the contract." See also Bernheisel v. Smothers, 5 Pa. Superior Ct. 113; St. Clair Coal Co. v. Martz, 75 Pa. 384; Dyer v. Wallace, 264 Pa. 169, at 174.

The order is reversed, the lien reinstated to the extent that it was stricken off, and a procedendo awarded.