Silfies, Appellant, v. Austin.

Argued December 10, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and STADTFELD, JJ.

*C. F. Smith* of *Smith & Paff*, and with him *Erdman & Williams,* for appellant.

*R. L. Mervine,* and with him *F. J. Mervine,* for appellee.

OPINION BY STADTFELD, J., January 28, 1932.

This is an appeal by plaintiff claimant from an order sustaining demurrer to sci. fa. and striking off a mechanic's lien.

Sometime prior to August 31, 1929, Victor Austin, by writing, employed William Silfies, plaintiff, to draw plans and specifications for the Grand Theater of East Stroudsburg, Pennsylvania. On August 31, 1929, Victor Austin extended the terms of the employment by a written agreement of that date, in which Victor Austin agreed to pay William Silfies the sum of four hundred and fifty dollars ($450.00) for preparing plans and specifications and inspection, and William Silfies, on his part, agreed to visit the site of the building from time to time at the owner's request, to make inspection, and issue the necessary certificates.

On March 26, 1930, plaintiff filed the lien in question, attaching copies of the agreements, and claimed the sum of four hundred dollars, balance alleged to be due under said agreements.

The lien sets forth, inter alia:

"4. The nature and character of the labor and services furnished by the claimant were the necessary

work and services for the drafting of the plans and specifications for the Grand Theatre at East Stroudsburg, Pennsylvania, and the inspection and visiting of the site of said theatre from time to time and the issuing of the necessary certificates in accordance with the written contract of which Exhibits Nos. "1-A" and "1-B" are true and correct copies and made a part hereof; and that the claimant fully performed the written contract as aforesaid."

...... "claimant did draft and furnish all the labor and services for the preparing of plans, specifications and inspection ...... from time to time, beginning on or about the 4th day of June, 1929 and ending on or about to wit: October 13th, 1929."

To the sci. fa. issued on this lien, defendant filed a demurrer, setting up that plaintiff's claims for drawing of plans and specifications, and inspecting and issuing certificates are not the subject-matter of a mechanic's lien; that it is the duty of plaintiff to show the days when he rendered the services of inspecting and issued the certificates; that he has not shown the value of any services other than purely architectural; that he has coupled important services for which he has no right to file a lien with other services as to which he may have such a right; that it is not claimed that plaintiff superintended the construction of the building, and therefore he cannot file a lien for such services.

The court below, President Judge SHULL presiding, in an opinion filed July 9, 1931, sustained the demurrer and struck off the lien. The court held that there being no allegation that plaintiff superintended the construction of the building, and the lien not showing the exact nature of the certificates, and that superintendence and inspection are not synonymous, that the lien did not set forth facts which would bring the services

rendered within the provisions of the mechanic's lien law.

In passing on this matter on demurrer, we must, of course, accept as facts all of the allegations contained in the lien.

The sole question on this appeal is whether a mechanic's lien can be filed for an architect's services when coupled with services for inspection and issuing certificates during construction of a building. The court below held that such a lien could be filed for architect's services when coupled with services of superintendence, but not when coupled with services of inspection.

There seems to be no substantial difference between the terms, but the real test is, whether the work is part of the services rendered in connection with the erection and construction of the building, and enhances the value of the building.

"Inspection is defined by Webster as follows:

"1. The act or process of inspecting or looking at carefully; a strict or prying examination; close or careful scrutiny; investigation. 2. The act of overseeing; official examination or superintendence."

The word "Inspector," is defined by the same authority as follows:

"One who inspects, views, or oversees; one to whom the supervision of any work is committed; one who makes an official view or examination, as a military or civil officer; a superintendent; a supervisor; an overseer."

In Hibbs v. Arensburg, 276 Pa. 24, while the right of an inspector to file a lien was not involved, the nature of an inspector's duties and services was discussed in an opinion by Mr. Justice Kephart, p. 30, as follows:

"When the contract was adopted an inspector was selected to give personal attention to the work.

...... The character of the position, with the work to be done, is of importance. Unless directed by law to the contrary, these authorities should be free to select the best available services. The inspector's duties are not comprehended in the architect's work; the former must make daily observations as the work progresses, to see that the contract is fully complied with as to quantity and quality of material and workmanship. He is the owner's special representative, and, unless on the ground during all the working time, his employment is useless and the district should not be called upon to pay for it."

The services of an inspector, for the purpose of issuing certificates, necessarily involves the question of whether or not the contract has been complied with as to the character and quality of construction entitling the contractor to payment, and are as important as superintendence during construction. Compliance with the terms of the contract and specifications certainly enhances the value of the building, and such services of inspection are rendered in connection with the erection and construction of the building as contemplated under the Mechanic's Lien Law.

The Mechanic's Lien Act of June 4, 1901, P. L. 431, makes a distinction when an architect is employed directly by the owner, and when he is employed by a contractor. In the former case, he is given the same standing and designation as a contractor while he is expressly excluded from being classified as a subcontractor.

Insofar as this act would give rights which this claimant did not possess prior to the Constitution of 1874, it is unconstitutional, and its language must be construed so as not to confer upon this special class of claimants any additional rights: Dyer v. Wallace, 264 Pa. 169, 174; Fluke v. Lang, 283 Pa. 54, 58.

In Bank of Pennsylvania v. Gries, 35 Pa. 423, it

was held that an architect employed to make the plans and drawings for a building, and to direct and oversee its erection in accordance therewith, is within the provisions of the mechanic's lien law, and entitled to a lien against the building for his labor.

This principle is directly affirmed in the case of St. Clair Coal Co. v. Martz, 75 Pa. 384; likewise in Hoekstra v. Hopkins, 87 Pa. Superior Ct. 15. See also Prouse v. Stocker, 74 Pa. Superior Ct. 55.

In the case of Dyer v. Wallace, 264 Pa. 169, referred to in the opinion of the lower court, the real point involved was that the architect's claim for breach of contract and for services not performed could not be sustained in the form of a mechanic's lien.

In Bennett v. Gerry Co., 273 Pa. 585, the architect was a sub-contractor and had no right whatsoever to file a mechanic's lien for a claim based merely on architectural services.

The objection that it is the duty of plaintiff to show the days when he rendered the services inspecting and issuing the certificates, is not well founded. Section 5 of the Act of April 16, 1845, P. L. 538, was passed to give to the principal contractor the right to file a lien, even though he had a special contract with the owner; and under it, beginning with Young v. Lyman, 9 Pa. 449, and running down to the present time (Brown v. Myers, 145 Pa. 17, 20; Murphy v. Bear, 240 Pa. 448, 451, Citizens Bank of Palmerton v. Lesko, 277 Pa. 174), it has been consistently held, where the contract was made directly with the owner, it was not necessary to set forth the items for which the lien was filed, unless the contract itself provided for the work or materials to be furnished as specific items.

The claim under consideration is based upon a lump sum contract made directly with the owner. It is in writing, and contemplates a bulk charge for the drawing of the plans and specifications, and the inspection

350

of the building from time to time as the work progressed. The lien on its face shows that the services were performed as contemplated, and provided for by the contract.

In our interpretation of the contract, the claim was for work done about the erection of the building within the words of the law.

The decree striking off the lien is reversed, the lien reinstated, and a procedendo awarded.